UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KOS Building Group, LLC,

        Plaintiff,

 - *against* -

R.S. Granoff Architects, P.C., et al.,

        Defendants.

19CV2918 (PMH)(LMS)

ORDER

**THE HONORABLE LISA MARGARET SMITH, U.S.M.J.**

  Currently pending before the Court is Plaintiff's motion to quash a subpoena served upon Plaintiff's attorney, Benjamin Brash, and for a protective order. Docket # 36. For the reasons that follow, the motion is granted in part and denied in part.

### BACKGROUND

**I. Factual Background**

  Plaintiff KOS Building Group, LLC, a developer of luxury homes in New York and Connecticut, is a New York limited liability company whose sole member is Bobby Ben-Simon. Docket # 1 ("Compl.") ¶¶ 1, 6. Defendant R.S. Granoff Architects, P.C. is a Connecticut professional corporation, and Defendant Richard S. Granoff is an architect licensed in the states of New York, New Jersey, and Connecticut, who lives in Connecticut and is the founder and managing principal of R.S. Granoff Architects. Id. ¶¶ 2-3.[1]

  In November, 2011, Plaintiff retained Defendants to prepare architectural plans, drawings, and specifications for the construction of a house at 5 Fox Run Lane in Greenwich, Connecticut. Id. ¶ 7; see Docket # 39 ("Adler Aff.") ¶ 5 & Ex. 1. In September, 2012, Plaintiff

---

[1] Defendants neither admit nor deny these allegations in their Answer. See Docket ## 14-15 (duplicate Answers filed by Defendants).

sent copies of Defendants' drawings to Arkona, LLC and its principal, Victor Baran, in New Hampshire in order to have a color rendering produced. Id. ¶ 6 & Exs. 2-3. On September 6, 2012, Baran sent a proposal to Plaintiff for the rendering which is "based on architectural drawings by Granoff Architects dated 08-01-12." Adler Aff. Ex. 3; see Compl. ¶ 8 ("On or about September 6, 2012, KOS commissioned a rendering from non-party Arkona LLC and its principal Victor Baran ('Arkona'), of the house KOS desired to build at the Fox Run Property (the 'Rendering')."). According to Plaintiff, on February 18, 2013, Ben-Simon sent Granoff a copy of the rendering produced by Arkona (the "Rendering") and told him about certain modifications that Plaintiff wanted made to the floor and house plans. Compl. ¶ 9. Plaintiff alleges that the Rendering "was developed pursuant to KOS's sole specifications and design, as provided to Arkona, including, but not limited to, site plans, landscape plans, all finishes and colors, and any background imagery." Id. ¶¶ 8, 11.

Plaintiff filed for, and obtained, a copyright for the Rendering. Id. ¶ 10 & Ex. A; Compl. ¶ 10. Plaintiff alleges that Defendants infringed upon its copyright several times in listing other residential properties in the fall of 2018. Compl. ¶¶ 13-31. Defendants claim that the architectural plans they created for the property at 5 Fox Run Lane have a copyright notice and claim of ownership on each page and that Granoff Architects gave Plaintiff "a limited license to use the plans only once, in connection with the construction of the named project, i.e. a single family residence at 5 Fox Run Lane, Greenwich, Connecticut." Adler Aff. ¶ 9 & Ex. 1. Defendants "do not dispute that in or around 2018 they sought to use the same or similar plans and concepts, which they owned the rights to, notwithstanding the limited license to KOS for the project for 5 Fox Run Lane." Id. ¶ 10. They concede that "Granoff Architects gave a copy of the

2

rendering, which had been given to it by plaintiff, to certain brokers to advertise the sale of vacant lots in Greenwich, Connecticut and Chappaqua, New York." Id.

On March 21, 2019, Plaintiff's counsel, Benjamin Brash, filed the copyright application for the Rendering on behalf of Plaintiff. Id. ¶ 11 & Ex. 4. This action was commenced on April 2, 2019. See Docket Sheet. Defendants claim that among the issues in this case are "the bona fides of that Application and whether the Registration is sufficient to confer copyright protection," and "[i]f the Application was improper, the Registration is void, resulting in this Court lacking jurisdiction." Adler Aff. ¶¶ 12-13.

## II. Procedural Background

Defendants deposed Ben-Simon on February 13, 2020, during which time they questioned him regarding the copyright registration application (the "Application") and its preparation and filing. The parties dispute whether Ben-Simon's testimony provided Defendants with all of the relevant information concerning this subject matter. On February 24, 2020, Defendants served a subpoena on Brash, seeking both testimony and documents regarding the preparation and filing of the Application for the Rendering. Docket # 38 ("Jacobs Decl.") Ex. A; Adler Aff. Ex. 9. The subpoena seeks to depose Brash about the following:

> All those facts and circumstances of the case with respect to the preparation and filing of the application for copyright registration of the "Fox Run Rendering"; including, but not limited to, the gathering of information and documentation in connection with the application and supporting said application.

Jacobs Decl. Ex. A. The subpoena also seeks the production of the following documents at Brash's deposition:

> All documents, records, notes, correspondence, including, but not limited to, electronic records, used and in connection with the filing of the Application for Copyright Registration of the "Fox Run Rendering",

3

>    Service Request # [-7527792431], on behalf of KOS Building Group, LLC
>    as purported claimant.
>
>    All supporting documentation used in connection with the above
>    Application, including but not limited to all correspondence;
>    communications; and agreements with Victor Baran and/or Arkona LLC.,
>    including any and all documents relied upon to support the "work for hire"
>    status of the subject visual art.
>
>    All documents, correspondence or communications received from or sent
>    to the Copyright Office in connection with said application, including, but
>    not limited to, the Certificate of Registration, Reg. # VA-143-436.

Id.

On March 24, 2020, Plaintiff filed a letter in which it stated its intention to make a motion for a protective order and to quash the subpoena. Docket # 34. In response, the Court set a briefing schedule for the motion. Docket # 35. In accordance with the schedule, the motion was fully submitted by April 13, 2020.

## DISCUSSION

### I. Legal Standard

"Motions . . . to quash a subpoena are . . . entrusted to the sound discretion of the district court." In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (internal quotation marks and citation omitted). "Parties generally do not have standing to object to subpoenas issued to non-party witnesses," except in the case of "parties who have a claim of some personal right or privilege with regard to the documents [or information] sought." Hughes v. Twenty-First Century Fox, Inc., 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (internal quotation marks and citations omitted). Included among these are claims of attorney-client privilege. Id. Federal Rule of Civil Procedure 45 provides that on a timely motion, a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or

"subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  "Additionally, subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1), which provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Malibu Media, LLC v. Doe, 15-cv-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016) (internal quotation marks, alteration, emphasis, and citation omitted).  "The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant."  ResQNet.com, Inc. v. Lansa, Inc., No. 01 Civ.3578 (RWS), 2004 WL 1627170, at *2 (S.D.N.Y. July 21, 2004) (internal quotation marks and citation omitted).

"Depositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case."  Shaub & Williams, L.L.P. v. Augme Techs., Inc., No. 13 Civ. 1101(GBD)(JCF), 2014 WL 1033862, at *5 (S.D.N.Y. Mar. 17, 2014) (internal quotation marks, alteration, and citation omitted).  Thus, depositions of opposing counsel are disfavored.  In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 71 (2d Cir. 2003).  Nonetheless, as the Second Circuit has noted,

> [T]he standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship.  Such considerations may include [1] the need to depose the lawyer, [2] the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, [3] the risk of encountering privilege and work-product issues, and [4] the extent of discovery already conducted.  These factors may, in some circumstances, be especially appropriate to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition.  Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered.

Id. at 72. Although, as has been pointed out, the standard set forth in Friedman is dicta, since the subpoenaed attorney consented to his deposition prior to the issuance of the Second Circuit's decision, id. at 67, it has also been noted that "[c]ourts within this Circuit rely on the language of Friedman when ruling on the appropriateness of ordering a deposition of opposing counsel." Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd., 07 Civ. 7983 (DAB)(HBP), 2016 WL 3042733, at *9 (S.D.N.Y. May 24, 2016) (collecting cases).

## II.   Analysis

### A.   Failure to Tender Witness Fee

Initially, Plaintiff argues that the subpoena should be quashed for failure to tender the required witness fee. Rule 45 of the Federal Rules of Civil Procedure provides that if a subpoena requires a person to appear and testify, then service of the subpoena must be accompanied by "tendering the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1). Courts in this District as well as this Circuit have deemed subpoenas invalid and granted motions to quash where a party failed to tender a witness fee with service of the subpoena. See, e.g., Juliao v. Charles Rutenberg Realty, Inc., CV 14-0808 (JFB)(AYS), 2018 WL 5020167, at *6 (E.D.N.Y. July 23, 2018) ("[T]he clear language of Rule 45 indicates – and federal courts both inside and outside of the Second Circuit have held – that failure to tender the required witness fee and mileage allowance can serve as an adequate ground for the invalidation of a subpoena.") (internal quotation marks and citation omitted), adopted by 2018 WL 4502172 (E.D.N.Y. Sept. 20, 2018); Brown v. Hendler, No. 09 Civ. 4486 (RLE), 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011) (citing cases). "This requirement is strictly enforced." Juliao, 2018 WL 5020167, at *6 (internal quotation marks and citation omitted).

In this case, Defendants cite an email exchange between counsel for the parties in which another attorney from Brash's office stated that the firm would "accept service [of the subpoena] by e-mail to our attention. From there, we can address the next steps." Adler Aff. Ex. 9. Defendants argue that "the service, acceptable [sic] of service, and present motion was an agreed upon procedure. Plaintiff is estopped from now claiming that Mr. Brash was not served or tendered the appropriate witness fee." Adler Aff. ¶ 28. Although Defendants cite no case law regarding waiver of the fee—and Plaintiff denies any waiver, see Reply Mem. at 5 ("That service was accepted by 'delivering a copy to the named person' by email does not mean that absent an agreement to [sic] contrary, the requirement to 'tender[] the fees for 1 day's attendance the mileage allowed by law' is foregone or waived.")—even if the Court were to deem the subpoena invalid and grant the motion to quash on this basis, Defendants could readily correct this defect by promptly re-serving the subpoena along with the witness fee. Accordingly, the Court shall proceed to address Plaintiff's other arguments in support of the motion.

### B.     Deposition of Opposing Counsel

As explained above, courts in this Circuit take into account the considerations set forth in Friedman when determining whether a party should be allowed to depose opposing counsel.

#### 1.     The Need to Depose the Lawyer

Plaintiff contends that "Defendants cannot establish that deposing Brash is a necessity, since any non-privileged information pertaining to the Application was obtained (or to the extent not obtained, could have been obtained) at Bobby Ben-Simon's deposition." Docket # 37 ("Mem. of Law in Supp.") at 7. In contrast, Defendants argue that there are "key elements that are peculiarly within Mr. Brash's knowledge," including the "date of first publication reported in the Application"; the "claim of 'work for hire' and the documentation, if any, upon which it [sic]

7

based"; and the "basis upon which the section on 'derivative work' was omitted in filing this Application." Adler Aff. ¶ 24.

The Court agrees with Plaintiff that Defendants already have evidence concerning the date of first publication of the Rendering, to the extent that it differs from the date included in the Application, based on both the Complaint and Ben-Simon's deposition testimony. Docket # 40 ("Reply Mem.") at 3; see Adler Aff. ¶ 8; Jacobs Decl. Ex. B ("Ben-Simon Depo. Ex. B") at 88:18-89:2 (testimony that in January or February, 2013, Ben-Simon gave copies of the Rendering to Tamar at a brokerage company, who had it placed in the property listing). Defendants argue that "[t]he issue of date of first publication is a critical factual issue not only going to the bona fides of the Application but also the ability to claim damages, and/or the amount thereof," and note that the first publication date of June 12, 2014, is "conveniently with [sic] 5 years before the filing of the Application." Adler Aff. ¶ 17. Indeed, the Copyright Act provides that "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate," and "[t]he evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c). But this does no more than demonstrate that Defendants' concerns regarding the date of first publication relate to evidentiary burden-shifting, not a lack of information peculiarly within Brash's knowledge.

Additionally, the Court agrees that other aspects of the information sought by Defendants may be obtained from another source, namely, Arkona, the other party to both the Copyright Assignment and the Memorandum of Agreement, documents which Defendants cite as written agreements related to the issue of whether the Rendering was a work for hire. Adler Aff. ¶ 19

("Notwithstanding, [sic] Mr. Ben-Simon's belief that he 'did not need' a contemporaneous written agreement plaintiff previously produced a document purporting to have been executed 'this 6 day of September 2012' [the Copyright Assignment]. . . . Also produced was a document . . . dated March 19, 2019 [the Memorandum of Agreement].") & Exs. 6-7. Arkona's principal, Victor Baran, could answer questions regarding those contracts and their impact upon Plaintiff's claim that the Rendering is a work for hire. Baran could also answer questions regarding the issue of whether the Rendering is a derivative work that is based on Defendants' architectural plans.

      Insofar as Defendants seek to depose Brash, their need to do so appears to be based on the suggestions that either (i) Plaintiff, through Brash, sought to mislead the Copyright Office into approving the Application, see Ben-Simon Depo. Ex. B at 83:17-20 ("Q. If someone prepared [the Application] on your behalf means you were certifying to the accuracy of that information; correct? A. Absolutely."), 87:14-16 ("Q. Mr. Brash prepared that [Application] from information given to him by you? A. Yes."); or (ii) Brash completed the Application with information that he himself had reason to believe was inaccurate. "Generally speaking, 'a misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action.' Nimmer on Copyright § 7.20[B][1]; see also 17 U.S.C. § 411(b)(1)." Chic Home Design, LLC v. New Journey Grp. Ltd., 15-CV-9468 (JPO), 2017 WL 3738775, at *3 (S.D.N.Y. Aug. 30, 2017).[2] "As long as there was no fraud on the Copyright Office and a

---

[2] Section 411(b)(1) of the Copyright Law states,

9

corrected application would still be eligible for copyright, the registration remains valid." Id. (citation omitted). Plaintiff is correct that the Copyright Act provides that "[i]n any case in which inaccurate information described under [Section 411(b)(1)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2). However, the Court disagrees that such "advice from the Copyright Office must be sought" in order for the discovery in this case related to the issues of date of first publication, work for hire, and derivative work to be relevant. Reply Mem. at 5. Rather, the Court does not believe that Defendants have established a need to depose Brash because they have failed to demonstrate that information related to these issues is "peculiarly within Mr. Brash's knowledge." Accordingly, this factor weighs against allowing Brash's deposition. See, e.g., Sea Tow Int'l, Inc. v. Pontin, 246 F.R.D. 421, 425-26 (E.D.N.Y. 2007) ("Although defendants['] counsel represented . . . that Stein possesses specific personal knowledge as to how defendants allegedly violated the Licensing Agreement at issue herein, defendants have not identified what that specific personal knowledge is. Moreover, much, if not all, of the information defendants

---

(b)(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1)(A)-(B).

claim to be seeking can be acquired from Pontin himself and/or representatives of Sea Tow. Accordingly, this factor weighs in favor of plaintiff.").

### 2. The Lawyer's Role

Brash's role in connection with the subjects as to which discovery is sought is as Plaintiff's lawyer, filing a copyright registration application on behalf of his client in preparation for commencing an action for copyright infringement.  See 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.").  In addition, with respect to the Copyright Assignment and the Memorandum of Agreement, according to Defendants, "[b]oth documents were prepared by Mr. Brash at or about the same time," Adler Aff. ¶ 19,[3] and thus, with respect to these documents and their contents, Brash was acting as Plaintiff's lawyer, seeking to advance and/or protect his client's rights in anticipation of litigation.  Since deposing Brash would therefore encroach upon the attorney-client relationship between Plaintiff and its counsel, this factor likewise weighs against allowing Brash's deposition.

### 3. Attorney-Client Privilege and Work Product

As explained in Section II.B.1., supra, Defendants either have the information they seek or can obtain it from Arkona and/or Baran, and it is unclear that any additional information that Brash has would fall outside either the attorney-client privilege or the work product doctrine.[4]

---

[3] The basis for this assertion is unclear.

[4] "The attorney-client privilege protects from disclosure '(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice.' "  Shaub, 2014 WL 1033862, at *2 (quoting In re Cty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007)).  "The privilege protects both the advice of the

Consequently, this factor weighs against allowing Brash's deposition.

### 4. The Extent of Discovery Already Conducted

Although discovery is virtually complete, Defendants claim that they did not recognize their need to obtain information from Brash concerning the contents of the Application until after Ben-Simon's deposition. See Adler Aff. ¶ 15 ("It is clear from the excerpt chosen by plaintiff's own counsel that Mr. Ben-Simon's responses to questions surrounding the content and filing of the Copyright Application were vague and/or evasive."). Plaintiff argues that Defendants should have sought to obtain the discovery they seek from Arkona and/or Baran at an earlier point in the litigation instead of now trying to obtain it from Brash, particularly since Defendants asserted in their Answers that Arkona and/or Baran should have been made parties to the action. See Reply Mem. at 3-4. The late stage of discovery and Defendants' failure to explore other options for obtaining this information before seeking to depose Brash weighs against allowing Brash's deposition. See ResQNet.com, Inc., 2004 WL 1627170, at *6 ("The extent to which discovery has already been conducted, the fourth Friedman factor, weighs against Lansa because virtually all of the discovery has been conducted and completed . . ..").

Considering all of the factors set forth in Friedman, the Court concludes that Brash's deposition should not be permitted.

### C. Documents Requested

Plaintiff does not explicitly argue to quash the document requests included in the

---

attorney to the client and the information communicated by the client that provides a basis for giving advice." Id. "The work product doctrine shields from disclosure materials prepared in anticipation of litigation by a party or its representative." Id., at *3 (internal quotation marks and citation omitted). "It is designed to protect 'mental impressions, conclusions, opinions or theories concerning the litigation.' " Id. (quoting United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998)).

subpoena.  Rather, in the context of its argument that the subpoena is invalid due to Defendants' failure to tender a witness fee, Plaintiff states that the subpoena "should be quashed, or in the alternative, that portion of the Subpoena seeking testimony from Brash should be stricken," Mem. of Law in Supp. at 5; and in the context of addressing the third Friedman factor, Plaintiff declares, "To the extent that Plaintiff [sic] seeks materials that are protected by the work product doctrine—which is unclear given the generality of requests in the Subpoena—then this further reflects the encroaching nature of Defendants' inquiry for which the Subpoena should be quash [sic]." Id. at 13.  In opposition, Defendants state, "If it was not a communication from KOS/Ben-Simon to Brash then we are also entitle [sic] to discover what, if any extrinsic document(s) or other evidence which Mr. Brash relied upon to complete this Application."  Adler Aff. ¶ 25.  Plaintiff states nothing in reply.  In sum, Plaintiff has failed to carry its burden of persuasion with respect to quashing the document requests included in the subpoena.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to quash and for a protective order (Docket # 36) is granted with respect to the request to depose Brash and denied with respect to the requests for Brash to produce documents.  Brash's responses to the document requests shall be served within 30 days of the date hereof.

In light of Plaintiff's assertion that Defendants should have sought the requested discovery from Arkona and/or Baran, and Defendants failed to do so, the Court shall give Defendants the opportunity to request an extension of the discovery deadline in order to seek this additional discovery.[5]  If Defendants wish to do so, they shall notify the Court within 7 days of

---

[5] Despite the current requirement for social distancing, depositions may be completed by video-conferencing; a court reporter, able to swear the witness, is not required to be in the same

the date hereof, and the Court shall extend the deadline for the completion of discovery by 60 days for this narrow purpose.[6]  If Defendants choose to pursue discovery from Arkona and/or Baran and thereafter believe that there is still information they have not obtained that would necessitate Brash's deposition, then prior to the deadline for the completion of discovery, they may re-serve a subpoena upon Brash, and Plaintiff may renew its motion to quash.

Dated: April 24, 2020
       White Plains, New York

                                              **SO ORDERED**,

                                              _____
                                              Lisa Margaret Smith
                                              United States Magistrate Judge
                                              Southern District of New York

---

location as the witness.  The key preparation for such a remote deposition is to be certain that all documents to be utilized are pre-marked, and copies are present and available at the witness's location, the court reporter's location, and the location of each counsel in the case.

[6] Since Judge Karas previously extended the discovery deadline to March 31, 2020, Docket # 33, the deadline for the completion of discovery would be extended to May 30, 2020.